522-0336 people versus Howard McNece. I think we have Mr. Lee on behalf of Mr. McNece and Ms. Lee on behalf of the state, correct? Correct, yes. As I told the last case, we didn't have any issues but we are on a maiden voyage with our hybrid zoom cart, whatnot. So if anybody has any issues, we'll try to make sure everybody is taken care of. If you do experience any problems with audio, video, raise your hand or somehow try to let us know. But hopefully we won't have to worry about that. So with all that being said, Mr. Lee, are you ready to proceed? I am, Your Honor. Go right ahead. Thank you, sir. Counsel? Your Honors, the record in this matter is perhaps not in all places as clear as one would hope it would be. But the fundamental legal arguments here are straightforward. My client, Mr. McNece, was convicted at jury trial of aggravated criminal sexual abuse. We have raised several arguments about improprieties at trial. The first among these was the admission of unredacted video evidence of an interview of my client conducted by Detective Winterbrink. There was a, and I guess I'll first note that it issue of admissibility here, that the court's findings of fact with respect to suppressing evidence are based on the manifest weight of the evidence standard. The ultimate ruling as to whether suppression is warranted is reviewed de novo. At issue here are a number of statements of an editorial or personal opinion nature that were made by Detective Winterbrink in the course of this interview. This included his statements to my client that there's no doubt in his mind that it happened, that you touched her vagina and Detective Winterbrink said there's no doubt in my mind that this took place. The motion in limine that was tendered to the court on this issue, I believe, and through further argument there were two different solutions that were argued here. And one of those was that the video could be kept out altogether and Detective Winterbrink could simply testify as to his discussions with my client and the admissions by Mr. McNeese. Alternately, and perhaps more realistically, there was the suggestion that this video could simply be redacted to take out these prejudicial statements. These statements were not, neither solution was exercised by the court and this was an abuse of the court's discretion. These statements were not relevant. They were improper opinions to present before the jury. To the extent that the court would find any probative value to the detective's opinions that this absolutely happened, and like comments, any probative value was by far outweighed by the unfair prejudicial value. Mr. Lee, did defense counsel object at the time the video was played? Judge, I would have to go back on the record and see if he renewed his objection when the video was played. This was the subject of a motion in limine in advance of the trial. Well, even if it was the subject of a motion in limine, would you agree you have to renew your objection at the time the evidence is played? Judge, I guess I would think I would be dependent in part upon whether there had been a standing objection acknowledged earlier on or whether that had in some way been anticipated. But I don't know the answer to your question. Well, if there's no objection made and there's no standing objection, don't you forfeit the issue on appeal? Or do you not know? Judge, I am not sure whether that is the case. Okay. Thank you. Your Honor, the second issue was the barring of testimony by Justin McNeese. Justin McNeese is the son of the defendant in this matter. It had been suggested that he would be able to offer testimony that the alleged victim in this matter made admissions to him with respect along the lines of, I've done everything I can to split up you and my mother, even lie about your dad. So there's been a suggestion that there was an admission by the alleged victim to Justin that she had fabricated evidence. The circumstances under which the disclosure was made get a little bit convoluted, and I hope that the statement of that in my brief is relatively clear, that there had been an early disclosure of Justin as a possible witness very late in the game. Shortly before trial, there was a supplemental disclosure of sorts in the form of notes. While the trial court does have broad discretion with respect to deciding what evidence comes in, that's not unlimited. As a discovery sanction in this matter, this was, barring the testimony altogether, was excessive and it was improper. Mr. Lill, let me stop you there. I don't think you were counsel at trial, correct? That is correct. But if my recollection is correct, wasn't some of the reason for the sanctions based upon defense counsel's, let's say, failure to follow court orders and properly do things that counsel was supposed to do in a timely fashion and that this disclosure came after a special hearing was held and just right before trial, if I'm remembering correctly? That was all part of the trial court's analysis, yes, your honor. I think the issue then is whether this was excessive under the circumstances. Your honors, a third issue was an unusual one in terms of, I admittedly could not find any Illinois case authority on point, but the record reflects that there were concerns raised that the jury was able to overhear certain, what were intended to be private conversations in chambers. I've noted that as best I can find a standard here, it is simply that the court does have broad discretion in overseeing the general conduct of the trial and overseeing the courtroom. There was indication that the jury was able to hear voices. There was a suggestion that they were able to hear yelling. There was a concern raised that the jury could very easily, if they were overhearing things, that they could draw improper conclusions. For example, who was being yelled at? But wasn't that addressed with the trial court? The trial court questioned, I think, the deputies and other people involved in the trial itself and made the determination that that allegation that the jury possibly heard things, let's just say didn't pass muster? There was an investigation of the matter along those lines, yes, your honor. Thank you. It's my understanding in that regard that the defendant did not ask the court to question the jurors once the bail was questioned. I would agree with that, your honor. Okay, then we can move on then. Thank you. Finally, there were several requests for a mistrial which were denied. I guess as my time runs out here, I want to make the point that sometimes a mistrial is appropriate based upon a single incident. Sometimes it's the cumulative effect of multiple issues that have been raised. In this instance, again, the record is perhaps a little bit confused with respect to the issue here, but one of the issues raised was that there was a sort of a fumbling in trying to get a video cued up and that some audio portion of the recording was heard when it should not have been. There was an objection raised regarding speaking objections. There was an objection raised with respect to the manner in which counsel was referred to by the counsel for the defendant was referred to by the state's attorney's office. Your honor, based upon these cumulative errors, my client should be entitled to a new trial. I thank you. I have one question. There were no citations in the record to a speaking objection where the defense counsel made an objection to that. It seems that when I reviewed the record, both parties made some speaking objections, but I didn't see where defense counsel made a specific objection. Your honor, if I could have just a moment, I think I could cite to the record on that. Okay. I believe that's around RI 170. 170? Well, I'm sorry, 168, somewhere in there. I'm trying to narrow it down. I apologize. And you think that was preserved? I think that objection was preserved, yes, your honor. Okay. And there was a post-trial motion on that? I believe that was part of the post-trial motion, yes, your honor. Okay. Thank you. Thank you. Thank you. Justice Wells, do you have any questions for Mr. Lee? Questions. All right. Obviously, Mr. Lee, you'll be given your time for rebuttal. Ms. Lee, go right ahead with your argument. Thank you. Good morning, your honors, counsel. May it please the court. I would prefer to spend most of my time, unless there are questions, on issue number two, because I do believe, as reflected in my brief, that the other issues have all been forfeited. So I will start with issue number two. One of the most telling points that I would bring up is when this was first brought to the trial court's attention, which was after the start of trial, based on the untimely filing, defense's position was, and it always has been, there was no discovery violation at all. He said he couldn't recall when the interview took place with Justin. He said, I don't really have any writing, oh, except for maybe the notes that I have of my interview. At the beginning, he said it was sometime after January 14th and before the last final pretrial, which this is in RI 382-83. At that point, I assume that he chose the January 14th date because that was when his second supplemental discovery was filed, where he detailed when exactly what he anticipated Justin would testify to. And that would be, it was filed on, you'll see in R376-77, that that was filed January 14th of 2022. Later, in the motion to reconsider, which was after jury, the trial had even started, suddenly he said that the conversation took place January 10th. And he said that on RI 162. What we have here, we have, this is an abusive discretion review, is the state's position. The court obviously had made a pretty good record about the fact that this, the court's findings from everything that the court was seeing in context with the parties and the attorneys before it and the course of the entire conduct, that this was, in fact, a deliberate tactic. And we, if you recall, I mean, this was, jury trials were just starting back up again with the COVID restrictions. Things were not easy. They had to be sort of take, you know, spreading people out and taking people out and into the room because of the microphones that were recording everything. Defendant had demanded a speedy trial. The jury was already selected. The only reason that this all came forward is because of the very, very, very last minute disclosure, which the court found to be an intentional tactic. As far as prejudice, the trial judge let Justin testify otherwise, other than this. And part of what Justin wanted to get in was the idea that there was some volatile relationship with him and that the CRB was always acting like an adult and all of those things. Those were testified by Justin. And I can find the site. I apologize. But he did, in fact, testify to that in the record. And the, you know, defense continually said, oh, this was just a courtesy out of an abundance of caution. Well, it's really hard to justify that when they did, in fact, disclose that they just waited until the courthouse was closed on the eve of trial. And, again, I just, I don't, you're not going to, I don't see how your honors could find an abuse of discretion here when you can only view the cold record and you can't see what was going on in front of the court. But even with that, I think there was enough here in the record to show that this was, in fact, gamesmanship. The last thing about this issue I would like to say is, in terms of why it would be disclosable, it's 413D, two little I's, which is the memorandum reporting or summarizing an oral statement. And that's not what Beauclair was about. But I would be, I would not think that the defense would want to take the position that this notes of its direct discussion, summarizing a witness's statement by an attorney, would not be disclosable to the defense if she was on the other foot. And Rule 412A1, a little I, would require the same thing to be turned over to the defense. So I'm not sure that they want to take the position that like an ASA, we have that all the time, talks to a witness, summarizes what was said, and turns it over. That's a memorandum describing or summarizing a statement, an oral statement. That's the people's position. If there are no questions about this, I would move on to I think issue number one, the detective statements. The people have cited the McCollum case. I think that that really is right on point. It was another case similar where the defendant never made any kind of an actual admission. So it isn't that they can, that you have to have the defendant turning it around and suddenly admitting. What you have is the defendant's reaction in the face of these statements. And again, I'd actually agree that this was not in fact preserved. However, to the extent that you and I would consider it, I don't recall a specific request for redaction. I may be wrong on that. But either way, it was the point that the detective was allowed to say these things and see what the defendant did. And the defendant was getting angrier and angrier, but he was also saying, oh, I was set up. This mother wanted to sue me. They never liked me. And so the jury was allowed, I believe, to consider that demeanor. And this especially goes into another argument that if you look at the defense witnesses, which were all defendants' family, all of them wanted to say, oh, we barely ever saw them. There was no relationship here. We didn't even know them barely. Except for, you know, Justin admitted he knew Molly, which was his girlfriend, and then he said he knew CRB, the victim, but, you know, they always had this horrible relationship. And I don't find that to be very credible, so the jury obviously probably took that to be very incredible as well. So what you have here is, you know, again, defendant on the one hand wanting to testify, barely knew them. On the other hand, oh, they were going to sue me. This was vengeance. They wanted land. I don't know what he was saying about something about that. So I just don't think that even if this were considered in the context of the entire trial, it's going to be harmless error. You had CRP testify very clearly. The sole defense here was the defendant was somehow a trained foot massager, and that was what he was trying to do, and this 13-year-old girl must have been confused when he was going up her leg all the way to her vagina area and rubbing there outside of her clothes. Somehow she didn't know, and he was actually giving her a foot massage. That was the defense. Obviously, the jury chose not to give that any credence. And I'm trying to – oh, the jury discussions? I apologize. There's so many issues here. The jury discussions, this was, again, in COVID restrictions. There was a microphone at the bench recording and broadcasting everything to outside public. So what was arranged was that when they did sidebars, they would go into a separate room, and that way the outside public couldn't hear. That's exactly what apparently happened here. As was discussed, Your Honors, there is no evidence. The bailiff said, I was in that courtroom. I never heard any yelling. I couldn't hear what was said. I just heard voices, and the court gave that credence, and then there was no remedy suggested. There was no revising of that or bringing it forward. Again, I think that's unless you would like me to address the mistrial, which I have not yet addressed, but I do believe it is forfeited for many reasons. If the court has no questions, I would just ask that the court affirm. I'm just making a note to myself. Hold on one second. Justice Cage or Justice Williams, before we move to rebuttal, do you have any questions for Ms. Lee? No questions. No questions. All right. Thank you, Ms. Lee. Thank you. Mr. Lee, go right ahead with your rebuttal. Thank you, sir. First, I'll note there was a question raised earlier about where in the record there's a reference to a mistrial basis of speaking objections. That's at RI-402. I would disagree with counsel's characterization here that the entire defense here revolved around a notion of the minor being confused and could not tell a foot massage from a sexual assault. And I think maybe it gets to the issue here that the defense that my client was trying to mount included the alternate theory that this was deliberate. And there were admissions by the alleged victim that she had lied. There were admissions by the victim that she was lying for the purposes of splitting up the defendant's son and her mother. And that is why it was so critical to allow in that testimony. One of the factors to be considered in determining a discovery sanction is the materiality of the proposed testimony. And in this case, it was essential. Judge, I have – Your Honors, I have cited some cases working with respect to notes and whether notes are dismissible as noted in our brief – I'm sorry, whether notes are discoverable. There is, in this instance, no motion by the state ever specifically requesting notes regarding interviews. There's no order requiring the disclosure of same. Well, let me start with that. How could the state make that request when they only got put on notice of this just a few days before trial? Your Honor, to the extent that there was an issue with the timeliness of this disclosure, I think it would be a question of whether other remedies were available here. And if it was just a matter of undue surprise, then a potential remedy would have simply been to continue the trial. Thank you. Mr. Lee, you cited to the record RI-402, and at that page in the record, it seems to indicate that the court was discussing with counsel the fact that speaking objections had been allowed throughout the trial. And there's no specific objection to a speaking objection that was made. Were you counsel of record at this time? I was not, Your Honor. And I'm just looking at RI-402 at lines 7 and 8 is when the concerns about speaking objections were raised in the context of a second motion for mistrial. I see that. Thank you. It still seems to be in the context of both parties making speaking objections. That is certainly what the court goes on to say, Your Honor. If there are any other questions? Justice Welch, do you have any questions? No questions. Justice Kagan, any further questions? Thank you. Thank you, Mr. Lee. Obviously, counsel, we will take the matter under advisement and issue an order in due course.